JOHN A. BUCKINGHAM AND WIFE *vs.* AMOS J. JACQUES.

Under the statute with regard to the distribution of ancestral estate, the "ancestor" intended is the one from whom the estate immediately, and not the one from whom it remotely, descended.

AMICABLE SUBMISSION to the Superior Court in Fairfield county upon an agreed statement of facts.

Certain real estate in controversy in the suit belonged in fee in the year 1825 to Samuel Burr, who died in that year leaving all his estate to his three daughters, Lucretia Weeks, Clarissa Ells, and Abigail Nichols. Lucretia Weeks acquired by conveyance the shares of the two others, and afterwards died, leaving one daughter, Ann, who died leaving a son, Everitt Weeks, who soon after died without issue. Clarissa Ells died, leaving one daughter who died without issue. Abigail Nichols died, leaving one daughter, Georgiana A. Buckingham, who with her husband is the plaintiff in the case. The land in question was inherited by Ann Weeks from her mother Lucretia Weeks, and from Ann Weeks it descended to her son, who died intestate, and as before stated without issue. The land in question being ancestral estate, the question was whether under the statute with regard to the distribution of ancestral estate Ann Weeks, the nearer ancestor, or Lucretia Weeks, the remoter ancestor, was to be regarded as the ancestor

whose "brothers and sisters or their legal representatives" were to take the property; the plaintiff Georgiana being the sole representative of the remoter ancestor, and the defendant having acquired by conveyance the rights of the representatives of the nearer ancestor. The case was reserved for the advice of this court. The statute is given in full in the opinion.

*E. Hall,* for the plaintiffs, cited *Bell* v. *Dozier,* 1 Hawks, 333; *Burgwyn* v. *Devereux,* 1 Ired. (Law), 583; *Wilkerson* v. *Bracken,* 2 id., 315, 320; 4 Kent. Com., 450, 452; 2 Bla. Com., 241.

*Beardsley* for the defendant, cited *Gardner* v. *Collins,* 2 Peters, 58; *Curren* v. *Taylor,* 19 Ohio, 36; *Lessee of Prickett* v. *Parker,* 3 Ohio S. R., 394; *Valentine* v. *Wetherill,* 31 Barb., 655; *Hyatt* v. *Pugsley,* 33 id., 373.

SEYMOUR, J. We are called upon in this suit to give a construction to that part of the statute of distribution which relates to ancestral estate. The language of the statute is as follows:

"All the real estate of the intestate which came to him by descent, gift or devise from his parent, ancestor, or other kindred, shall belong equally to the brothers and sisters of the intestate and those who legally represent them of the blood of the person or ancestor from whom such estate came or descended; and in case there be no brothers or sisters or legal representatives as aforesaid, then equally to the children of such person or ancestor and those who legally represent them; and if there be no such children or representatives, then equally to the brothers and sisters of such person or ancestor and those who legally represent them; and if there be none such, then it shall be set off and divided in the same manner as other real estate."

The intestate, Everitt Weeks, died in 1840, unmarried, without issue and without brothers or sisters or representatives of them. The real estate in controversy, situate in Bridgeport, was owned by him in fee at the time of his death.

He inherited it from his mother Ann, and she inherited it from her mother Lucretia. On his death his father, being next of kin to his son, and claiming as his heir, conveyed the property to the defendant, who is now in possession. The plaintiff, Mrs. Buckingham, claims that on the death of Everitt Weeks the title vested in her. She is the daughter and only surviving representative of Abigail, a sister of the said Lucretia. The whole question between the parties resolves itself into this:—from whom, within the meaning of the statute, did the estate come by descent to the intestate, Everitt Weeks? The plaintiff says it came to him from his grandmother Lucretia, and if it did, then it now belongs by the express words of the statute to Mrs. Buckingham as the representative of her mother, sister of Lucretia. The defendant says it came to the intestate from his mother, and if it did, then by the express words of the statute, there being no brothers or sisters of her or representatives of them, the estate is to be set off and divided in the same manner as other estate not ancestral.

It is clear that the statute provides only for the relatives of the one ancestor from whom the estate came. It makes no provision for the relatives of more than one such ancestor, and either the mother is that ancestor in exclusion of the grandmother or the grandmother is that ancestor in exclusion of the mother; so that if we decide that the estate came from the grandmother we do necessarily decide that it did not, in the sense of those words as used in the statute, come from the mother; and the main difficulty in the question which we are called on to decide arises from the circumstance that in a certain sense the estate came to the intestate from his mother and in a certain sense also from his grandmother, and we are called upon to say in which of the two senses the words are used in the statute. Now the intestate certainly inherited this estate from his mother. He makes title to it as her heir. It is not according to the natural use of language to say that he inherited it from his grandmother or that he is her heir. It is true that in a general sense the

property came to him from his grandmother; it came so remotely, but proximately it came from the mother. It came from the grandmother by an intermediate descent, but from the mother the descent is immediate and direct, by one descent and not by several descents. We think the natural meaning of the words of the statute requires us to look to the immediate descent and immediate ancestor, rather than to a remote descent and a remote ancestor.

It was said in argument that by this construction we do not give full effect to the statute; that the statute intended to preserve ancestral estate in families so long as any descendant remained alive of any ancestor through whom the estate came. But this argument assumes the very matter in dispute. It is conceded that the statute intended to make ancestral estate to a certain extent an exception to the general canons of descent, but the limits of the exception must be controlled by the words used to express that extent, and we have no right to say that the legislature intended to treat any estate as ancestral except so far as it is declared to be such by the words of the statute. We do not feel authorized to extend the provisions of the statute beyond the brothers and sisters and their representatives, of the immediate ancestor from whom the estate directly came.

The statute of Rhode Island contains a clause very similar to that under our consideration. In the case of *Gardner* v. *Collins*, 2 Peters, 98, a question like that before us arose on the construction of that clause. The case was most elaborately argued at the bar, and exhaustively discussed by Judge Story, who gives the opinion of the court. He says in conclusion: " We all think that the words ' come by descent, gift, or devise from the parent or other kindred' mean immediate descent, gift, or devise, and make the immediate ancestor, donor, or devisor the sole stock of descent."

The same construction has in Ohio been given to the statute of that state, expressed in words almost identical with those used in our law. *Curren* v. *Taylor*, 19 Ohio R., 36; *Lessee of Prickett* v. *Parker*, 3 Ohio S. R., 394. We are

aware that in North Carolina a different construction prevails, but founded upon considerations not applicable here.

We advise that judgment be rendered for the defendant.

In this opinion the other judges concurred.